UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13024-GAO

ALLEN MEDICAL SYSTEMS, INC.,
Plaintiff,

v.

SCHUERCH CORPORATION, d/b/a SCHUREMED,
Defendant.

<u>CLAIM CONSTRUCTION ORDER</u>
June 26, 2020

O'TOOLE, S.D.J.

The plaintiff, Allen Medical Systems, Inc., alleges that the defendant, Schuerch Corporation, d/b/a SchureMed, infringes its U.S. Patent No. RE 41,412 (the "'412 Patent"), entitled "Leg Holder System for Simultaneous Positioning in the Abduction and Lithotomy Dimensions," and its U.S. Patent No. 6,622,980 (the "'980 Patent"), entitled "Socket and Rail Clamp Apparatus." SchureMed counterclaims for a declaratory judgment of invalidity and non-infringement. The parties dispute the meaning of certain terms in the patents' claims and have moved the Court to determine their proper construction in accordance with <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996). The Court held a <u>Markman</u> hearing during which the parties presented a tutorial on the subject technology and disputed the meaning of multiple terms that are included in the claims of the patents-in-suit. The Court now construes those terms as set forth herein.

**I.      Overview of Patented Technology**

Allen and SchureMed both make and sell surgical equipment for positioning patients during certain medical and surgical procedures. The patents-in-suit are for a leg holder system, or

stirrups, used for positioning a patient's legs on a surgical table and for a clamp to attach a surgical accessory to the surgical table. Prior stirrup designs involved a mounting clamp located on the fixed siderail of the surgical table beneath the sterile drape, permitting a possible violation of the sterile surgical field when adjusted. Later designs permitted stirrups to be raised and lowered through the surgical drapes, but these devices had limited adjustment capabilities. The patent-in-suit for the stirrups (the '412 Patent) purports to improve the leg holder system by permitting adjustment of the stirrups without violating the sterile field and by allowing movement in multiple directions simultaneously by means of a single remote handle. In particular, the patented invention purports to permit simultaneous adjustment about two axes—horizontal, or "abduction," and vertical, or "lithotomy." The patent-in-suit for the clamp (the '980 Patent) is designed with a moveable lower jaw to permit easy attachment along the siderail and purports to improve upon prior art clamps with rigid lower jaws, which slid along the siderail for positioning and could make for inconvenient and awkward adjustments during emergent surgical situations.

The United States Patent and Trademark Office granted Allen patents directed to its surgical stirrup and its clamp, including U.S. Patent 5,802,641, granted September 8, 1998, and reissued as the '412 Patent on July 6, 2010, and the '980 Patent on September 23, 2003.

## II.     Principles of Claim Construction

The task of claim construction presents a question of law to be decided by the Court. See Markman, 517 U.S. at 388–89. The Court's responsibility in construing claims is to determine the meaning of claim terms as they would be understood by persons of ordinary skill in the relevant art. Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001). The starting point in construing such claims is their "ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question

at the time of the invention." See Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Sometimes, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent, . . . and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314 (citation omitted).

However, when the meaning is not readily apparent, the Court looks at intrinsic evidence to show what a person of skill in the art would have understood the disputed claim language to mean. Id. Intrinsic evidence, which comprises the patent itself, including the claims, the specification, and the prosecution history, "is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Where there is a dispute about the meaning of a term used, the ordinary rule is that it is to be understood "in the context of the particular claim in which the disputed term appears." Phillips, 415 F.3d at 1313. The specification, setting forth the written description of the invention, is "highly relevant to the claim construction analysis," Vitronics Corp., 90 F.3d at 1582, but a court may not import or graft limitations from the specification into the claim, Phillips, 415 F.3d at 1323.

A court may also at times consider extrinsic evidence such as dictionaries, treatises, and expert testimony. "The court turns to extrinsic evidence only when the intrinsic evidence is insufficient to establish the clear meaning of the asserted claim." Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc., 206 F.3d 1408, 1414 (Fed. Cir. 2000); accord C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) ("[E]vidence extrinsic to the patent document can shed useful light on the relevant art, but is less significant than the intrinsic record in determining the legally operative meaning of disputed claim language.") (internal citations and

quotations omitted). The Court cannot use extrinsic evidence to "contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1324.

Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Id. at 1316 (quoting Renishaw PLC v. Marposs Soceita' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

This case centers on a dispute between the parties as to whether the patents rely on means-plus-function limitations to describe what is claimed. The Patent Act authorizes functional claiming: "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). "In exchange for the ability to use a generic means expression for a claim limitation, 'the applicant must indicate in the specification what structure constitutes the means.'" Ergo Licensing, LLC v. CareFusion 303, Inc., 673 F.3d 1361, 1363 (Fed. Cir. 2012) (quoting Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 948 (Fed. Cir. 2007)). Where a claim term does not use the word "means," there is a rebuttable presumption that means-plus-function claiming does not apply. Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (citation omitted). This presumption may be overcome if the "challenger demonstrates that the claim term fails to recite[] sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." Id. (internal quotation marks and citation omitted).

**III.     Discussion**

    A.    '412 Patent

        i.    *"clamping device" (Claims 1, 14, 24, 48, 49)*

SchureMed argues that "clamping device" is a means-plus-function element. The word "means" does not appear in the claim recitation. Consequently, there is a rebuttable presumption that § 112(f) does not apply. See id. (citation omitted).

SchureMed has not rebutted the presumption because it has not demonstrated that the claim term "fails to recite[] sufficiently definite structure" or "recites function without reciting sufficient structure for performing that function." See id. (internal quotation marks and citation omitted). SchureMed's proposed application of § 112(f) would divorce "clamping device" from its context in an effort to make it a purely functional description, rather than a structural component that interacts with the other components in the claimed invention. "The noun 'clamp' may cover 'a broad class of structures,' but it is used in common parlance to connote a certain type of device. The use of the term 'clamping' therefore provides the structural specificity that a means-plus-function element would lack." See Samson Mfg. Corp. v. Austin Precision Prod., Inc., No. 09-cv-30027-MAP, 2010 WL 2639864, at *6 (D. Mass. June 29, 2010).

Because a person of ordinary skill in the art would understand the term as used in the '412 Patent to connote structure, the claim does not describe a means-plus-function element. The term needs no construction beyond its plain and ordinary meaning.

        ii.    *"first clamping element"* and *"second clamping element" (Claims 14, 20, 24, 31, 35, 48, 49)*

For substantially the same reasons described above, the Court rejects SchureMed's contention that these terms should be construed as a means-plus-function claim limitation. A

person of ordinary skill in the art would read the terms to connote structure. The plain language, read in context of the claim as a whole, makes clear that these two terms are structural components, or sub-parts, of the "clamping device" (i.e., the "clamping device" has a "first clamping element" and a "second clamping element" among its "plurality of clamping elements"). The terms "first clamping element" and "second clamping element" will be given their plain and ordinary meaning.

### iii. "clamp and release" (Claim 1)

SchureMed would construe "clamp and release" to mean "[t]o grip or bind the support device and the mounting device, and to release the gripping or binding of the support device and the mounting device," while Allen advocates for the term's plain and ordinary meaning. SchureMed's proposed construction imports a limitation that the support device—the tube—be gripped and released. But that limitation is not supported in the intrinsic record. According to the specification, the support device tube is force fitted into a portion of the clamp. (See Col. 4:16–18 (describing the proximal end of the support device as fixed or force fitted into a part of the clamp).) The clamp does not clamp directly to the support device, nor does the clamp "grip or bind" both the support device and the mounting device.

The term should be understood in its plain and ordinary meaning.[1]

### iv. "is moveable" and "being moveable" (Claims 14, 24, 48, 49)

The Court finds that "is moveable" and "being moveable" have their plain and ordinary meanings and no further construction is necessary.

---

[1] The same is true for the words "release and secure" contained in Claim 7. (See L.R. App. E(B)(4) Joint Statement on Claim Construction 4–5 (dkt. no. 92).)

B.     '980 Patent

    i.     "coupled to" (Claims 1, 2, 4, 5, 14, 18)

The parties generally agree that if the Court construes the term "coupled to," then it should be construed to mean "joined or connected to." SchureMed seeks to further limit the term to require that "two separate things [be] joined or connected directly together; not integral." Its proposed construction adds a structural requirement that two separate things be directly connected and a further limitation that those two things not be integral. The intrinsic evidence, however, does not support the proposed restrictions; indeed, the proposed construction is at odds with the embodiments, which include an upper and lower jaw that are not connected directly together. The Court construes the claim to mean "joined or connected to" without limitation as to whether the connection is direct or indirect. See, e.g., Biax Corp. v. Intel Corp., Civil Action No. 2:05-CV-184, 2007 WL 677132, at *14 (E.D. Tex. Mar. 1, 2007) (finding that "'coupled' means 'connected, directly or indirectly'"); Silicon Graphics, Inc. v. nVidia Corp., 58 F. Supp. 2d 331, 346 (D. Del. 1999) (applying the "ordinary meaning of the term 'couple'" and determining that in context of case it meant "coupled or connected, directly or indirectly").

    ii.    "a body" (Claims 1, 2, 5, 23)

The claimed invention "provides a socket and clamp apparatus for securing a device to a rail using a single actuation force and using a minimum of operations. The apparatus comprises a first jaw, a second jaw, a body, and a member." (Col. 1:47–51.) Allen contends that the term "body" is readily understood and should be accorded its plain and ordinary meaning, while SchureMed disagrees and argues three alternate views: (1) the term is indefinite; (2) the term should be accorded a means-plus-function limitation; and (3) the term should be limited to construction as described in the specification. The first two arguments can be easily disposed of.

The term "body" is not unamenable to construction; indeed, SchureMed offers as a construction the structure described in the embodiment of the specification. Nor should it be accorded a means-plus-function application where persons of ordinary skill in the art would understand the term "body" to signify a sufficiently definite structure.

SchureMed's third argument merits some additional discussion. SchureMed argues that "body" should be understood as it is described in the illustrations, where the "body 4" is "adjacent lock 6 which is adjacent clamp 2" and is "defined by two side walls 37, 38, and top and bottom walls 40, 42 extending therebetween. . . . [W]alls 37, 38 are convex-shaped surfaces. An end wall 44 is provided on coplanar edge of walls 36, 38, 40, 42. A bore 46 is disposed through body 4 to receive a post 48 of a surgical accessory 50." (Col. 3:37–44.)

SchureMed's attempt to import the limitations from the example described in the specification is rejected. While a "patentee's choice of embodiments can shed light on the intended scope of the claim," a "patent claim term is not limited merely because the embodiments in the specification all contain a particular feature." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 865 (Fed. Cir. 2004) (citing Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 907–08 (Fed. Cir. 2004)). Here, the patentee has not demonstrated a clear intention to limit the claim scope using words that manifest exclusion or restriction with respect to the disputed term. (See, e.g., Col. 2: 45–47 ("The present invention will be described hereinafter with reference to the attached drawings which are given as non-limiting examples only."); Col. 3:12–15 ("The exemplification set out herein illustrates an embodiment of the invention, in one form, and such exemplification is not to be construed as limiting the scope of the invention in any manner.").) There is no limiting language in the specification that suggests the patented invention would not work absent a body

that adheres strictly to the embodiment, nor does it include language that the body so described is the improvement over the prior art that warranted issuance.

The Court finds that in the context of the '980 Patent, the plain and ordinary meaning of "body" would be clear to a person of ordinary skill in the art.

   iii. *"member moveable relative to the first and second jaws" (Claims 1, 2, 5)*

Again, Allen contends the term "member" to be readily understood in the industry by its plain and ordinary meaning, while SchureMed contends that it should be construed as a means-plus-function limitation, and again, the Court agrees with Allen. In the context of the patent, "member" implies a sufficiently definite structure to a person of ordinary skill in the art. The specification treats "member" as a structural term, as the apparatus is described as comprising of a first jaw, second jaw, a body and a member. The "member" is the part of the claimed apparatus that can be moved relative to the first and second jaws. Claim 2 adds the further restriction that it be spaced apart from the rail when in the release position and engage the rail in a lock position. Additionally, as Allen notes, dictionary definitions reveal that the term has structural implications. (See, e.g., Decl. of Taylor Corbitt in Supp. of Pl.'s Opening Claim Constr. Br. Exs. D & E (dkt. nos. 77-4 & 77-5).)

The term will be accorded its plain and ordinary meaning.

   iv. *"plurality of components" (Claim 14)*

SchureMed argues that "plurality of components" is a means-plus-function term. The Court disagrees. Claim 14 describes an apparatus for securing a surgical accessory to a rail comprising of a clamp and a socket assembly. The socket assembly in turn is comprised of a "plurality of components," or a number of parts, including an accessory socket adapted to receive a portion of

the surgical accessory. The term sufficiently connotes structure, and it will be accorded its plain and ordinary meaning.

> v. *"[plurality of components] being moveable between a loosened configuration and a tightened configuration" (Claim 14)*

The plain and ordinary meaning will apply to this term. With respect to movement, the term requires only that the plurality of components be moveable between a loosened and a tightened configuration without reference to whether each of the parts that comprise the "plurality of components" separately be capable of moving between the two positions.

/s/ George A. O'Toole, Jr.<br>
Senior United States District Judge